NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERTA BORDEAUX, *on behalf of herself and those similarly situated*,<br><br>        *Plaintiff*,<br><br>v.<br><br>LTD FINANCIAL SERVICES, L.P., ADVANTAGE ASSETS II, INC, and JOHN DOES 1 to 10,<br><br>        *Defendants*. | Civil No. 2:16-0243 (KSH) (CLW)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Before the Court is a motion for class certification pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiff Roberta Bordeaux has sued LTD Financial Services, L.P and Advantage Assets II, Inc. (collectively "defendants") on behalf of herself and those similarly situated, alleging violations of the Fair Debt Collection Practices Act (FDCPA).

**I.    Background**

Bordeaux, a New Jersey resident, owed Citibank a past-due credit card debt on her account, which it then sold to Advantage Assets. (D.E. 25, Amended Complaint, ¶¶ 14, 15, 18.) On January 14, 2015, LTD Financial, the debt collecting branch of Advantage Assets, mailed Bordeaux a letter stating the amount due, offering three different settlement options with payment plans. (D.E. 25, Amended Complaint, ¶ 25.) The letter cautioned that discharge of the debt might have tax consequences. (D.E. 25, Amended Complaint, ¶ 31.) The paragraph on which this action centers stated:

1

> Whenever $600 or more of a debt is forgiven as a result of settling a debt for less than the balance owing, the creditor may be required to report the amount of debt forgiven to the Internal Revenue Service on a 1099C form, a copy of which would be mailed to you by the creditor. If you are uncertain of the legal or tax consequences, we encourage you to consult your legal or tax advisor.

Bordeaux claims the paragraph is deceptive and misleading, and therefore violates 15 U.S.C. § 1692e(10) of the FDCPA.

## II. Jurisdiction

The FDCPA grants "any appropriate United States district court" jurisdiction to enforce any liability the statute creates. 15 U.S.C. § 1692k(d). The Court exercises its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Defendants argue that Bordeaux lacks standing because she did not suffer a concrete and particularized injury. (D.E. 56, Defendants' Brief in Opposition to Class Certification, at 22.) This argument fails. Bordeaux need not show the debt collection letter actually confused or misled her; "it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008). The FDCPA "clearly affords alleged debtors…with the substantive right to be free from abusive debt collection practices." *Grubb v. Green Tree Servicing*, No. 13-07421, 2017 WL 3191521 at *5 (D.N.J. July 27, 2017). The injury, for standing purposes, is framed as a right to receive accurate and non-misleading information. Bordeaux alleges she is injured by the fact that she received misleading information, and this is a sufficient injury to confer standing.

## III. Standard

"In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three

categories of class actions defined in Rule 23(b)." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308-09 (3d Cir. 1998). Bordeaux seeks class certification under Rule 23(b)(3), for which she must establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

But before reaching either inquiry under Rule 23(a) or (b), a court must "clearly define the parameters of the class and the claims to be given class treatment, as required by Rule 23(c)(1)(B), and must also determine whether the class [is] objectively ascertainable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

While the party seeking certification bears the burden of establishing all requirements under Rule 23, "the substantive allegations of the complaint must be taken as true." *Stair ex rel. Smith v. Thomas & Cook*, 254 F.R.D. 191, 197 (D.N.J. 2008) (*quoting In re Chiang*, 385 F.3d 256, 264 (3d Cir. 2004)). The underlying merits of the case need not be entertained at this stage. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir 2011) (explaining "there is no 'claims' or 'merits' litmus test incorporated into the predominance inquiry beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof"). The Supreme Court has noted that while it "may be necessary for the court to probe behind the pleadings," district courts generally do not analyze the merits of a claim to determine class

certification. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (*quoting General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).[1]

**Discussion**

    **a. Threshold Issue of Class Definition and Ascertainability**

In *Marcus*, the Third Circuit directed district courts to define a potential class and determine its ascertainability first, before engaging in either the Rule 23(a) or (b) inquiry. *Marcus*, 687 F.3d at 591.

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). In a recent FDCPA case based on form collection letters, the class was defined as:

> All New Jersey consumers who were sent initial letters and/or notices from Green Tree concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was transferred to Green Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated.
>
> and/or
>
> All New Jersey consumers who were sent initial letters and/or notices from Green Tree concerning a debt owed to Fannie Mae and/or Bank of America, between July 24, 2013 and July 24, 2014, which was in default at the time the debt was transferred to Green

---

[1] The majority of defendants' brief discusses the underlying merits of plaintiff's FDCPA claim. Defendants argue that Bordeaux and other class members could have used the Home Depot credit card for business, instead of personal uses, which would preclude application of the FDCPA. (D.E. 56, Defendants' Brief in Opposition to Class Certification, at 8.) At this stage, the Court accepts Bordeaux's allegation that the credit card was used for personal items. Defendants also argue that the language in the letter is true and not misleading, and therefore does not violate the FDCPA. Two recent cases within the Third Circuit have denied debt collectors' motions to dismiss when the collection letters use exactly the same language. *See Balon v. Enhanced Recovery Co.*, 190 F. Supp. 3d 385, 391 (M.D. Pa. 2016); *Velez v. Enhanced Recovery Co.*, No. 16-164, 2016 U.S. Dist. LEXIS 57832 (E.D. Pa. May 2, 2016) (the letter "could mislead or deceive the least sophisticated debtor" because the language "suggests the possibility that the cancelled debt could be reported" to the IRS).

Tree, where such letter/notice stated the amount of the debt but did not provide such information regarding how the amount of the debt was calculated, and was sent an additional letter/notice within 30 days of the initial letter/notice which provided 'Monthly Payment Information', and/or the 'Principal Balance' and/or the 'Escrow Balance.' *Grubb*, 2017 WL 3191521, at *15.

The court in *Grubb* found this definition ascertainable because it "is comprised of objective criteria and factors, and, therefore, is capable of being ascertained from Defendant's business records." *Id.* at 16.

Here, Bordeaux seeks to define the class as:

> All natural persons residing in the State of New Jersey, to whom LTD Financial Services, L.P. sent a collection letter dated from January 13, 2015 through and including January 13, 2016, in an attempt to collect a consumer debt allegedly owed to Advantage Assets II, Inc.; and contained the same or similar language, "Whenever $600.00 or more of a debt is forgiven as a result of settling a debt for less than the balance owing, the creditor may be required to report the amount of the debt forgiven to the Internal Revenue Service on a 1099C form, a copy of which would be mailed to you by the creditor. If you are uncertain of the legal or tax consequences, we encourage you to consult your legal or tax advisor. (D.E. 52, Plaintiff's Motion for Class Certification, at 3.)

As so defined, Bordeaux's proposed class is ascertainable. All potential members are easily identified and can be contacted through defendants' business and mailing records. The Court is satisfied that Bordeaux has pleaded the threshold requirements of ascertainability.

### b. Rule 23(a) Inquiry

#### i. Numerosity (Fed. R. Civ. P. 23(a)(1))

A class must be so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). The Third Circuit has set the class baseline at 40 people. *Marcus*, 687 F.3d at 595; s*ee also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, 1,994 people residing in New Jersey received the form letter with the same language about tax consequences. (D.E. 52-3, Declaration of Philip D. Stern, at ¶ 5.) This proposed class meets the numerosity requirement.

### ii. Commonality (Fed. R. Civ. P. 23(a)(2))

Rule 23(a)(2) requires questions of law or fact be common to the class. In other words, this requires a showing that "class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551. The commonality requirement overlaps significantly with the Rule 23(b)(3) predominance inquiry, and therefore will be discussed below. *See Stair*, 254 F.R.D. at 198 (analyzing commonality prong of 23(a) within 23(b)(3) predominance prong).

### iii. Typicality (Fed. R. Civ. P. 23(a)(3))

Rule 23(a)(3) requires a plaintiff to show "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The purpose of this inquiry is to ensure that the "representatives and the class claims arise from the same event or practice or course of conduct and are based on the same legal theory." *Grubb*, 2017 WL 3191521 at *20; *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). Referring to both commonality and typicality, the Third Circuit has "set a low threshold for satisfying both requirements." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

In similar FDCPA cases in this district, typicality has been satisfied when the same debt collection letters are sent to many individuals. *Stair*, 254 F.R.D. at 199 (finding typicality when "the letter plaintiff received from defendants was identical to those received by the class members in all relevant aspects"); *Grubb*, 2017 WL 3191521 at *20. As this Court has previously held, "[I]f plaintiffs allege that the settlement letter is in contravention of FDCPA, while defining the class as those persons who have received the same letter, logic suggests that those other recipients would share the same cause of action arising from that letter—especially because…FDCPA is akin to a strict liability statute." *Williams v. Pressler and Pressler, LLP*,

6

No. 11-7296, 2013 WL 5435068, at *7 (D.N.J. Sept. 27, 2013). *See also Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012).

Applying that reasoning here, the typicality requirement is satisfied. Bordeaux's claims and the class's claims are the same. Nearly two thousand individuals in New Jersey received a debt collection letter from defendants, and every letter included the same language about tax consequences. The merits of the case turn on whether that language violates the FDCPA.

### iv. Adequacy (Fed. R. Civ. P. 23(a)(4))

Rule 23(a)(4) requires that the named plaintiff will "fairly and adequately protect the interests of the class." Newberg on Class Actions § 3.54 advises that courts consider "the proposed representative's knowledge of the case, interest in and enthusiasm for the litigation and for representing the class, her willingness to respond to interrogatories and depositions, and her understanding of the role and duties of a class representative." This is a relatively low bar, requiring only "a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (internal quotes omitted).

Bordeaux meets this requirement, as do her lawyers. She claims that she is willing and able to serve as class representative. (D.E. 52-5, Roberta Bordeaux Declaration.) Her lawyers claim extensive experience in class action and FDCPA cases, as well as a willingness to commit sufficient resources to represent this class. (D.E. 52-2, Declaration of Andrew T. Thomasson; D.E. 52-3, Declaration of Philip D. Stern; D.E. 52-4, Declaration of Yongmoon Kim.) There is no need to go behind these representations.

### c. Rule 23(b)(3) Inquiry

Bordeaux is seeking Rule 23(b)(3) certification, which requires "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. 23(b)(3). The rule directs the Court to consider: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

Courts have broken down the 23(b)(3) inquiry into two main requirements: predominance and superiority. First, the predominance requirement "tests whether the class is sufficiently cohesive to warrant adjudication by representation," and whether "issues common to the class predominate over individual ones." *Stair*, 254 F.R.D. at 200 (*quoting Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147-48 (3d Cir. 2008)). In *Stair*, the district court found the predominance requirement satisfied "because the [proposed] class members…all share a common nucleus of fact – the receipt of a nearly identical [settlement] letter – and the viability of their claims turn on a … determination as to the conformity of the letters with [the FDCPA]." *Id.* at 201.

Here, defendants sent nearly identical letters in attempts to collect debts owed on Home Depot credit cards. (D.E. 52, Plaintiff's Brief for Class Certification, at 14.) The central question of law is also similar among class members. The merits of the class's case turn on whether the Tax/Legal Consequences Warning in the letter violates the FDCPA. *Id.*

The second requirement of 23(b)(3) is superiority: that is, whether a class action is better than individual litigation to adjudicate the case. The Third Circuit has advised district courts to balance, "in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Stair*, 254 F.R.D. at 201 (*quoting Danvers*, 543 F.3d at 149-50). A central purpose of class actions is efficiency. The Supreme Court has noted that it is efficient to allow plaintiffs to aggregate small claims, especially when it would be difficult and unlikely for each plaintiff to bring a suit. *See generally Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985). Quoting the Seventh Circuit, the Supreme Court found that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually attorney's) labor." *Amchem Product*, 521 U.S. at 617.

FDCPA cases fit cleanly within this rationale. Congress intended the FDCPA "to be self-enforcing by private attorneys general." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). The purpose of a citizen suit provision is to "aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed to benefit from the deterrent effect of civil actions brought by others." *Jacobson*, 516 F.3d at 91. If each class member needed to demonstrate her own state of mind as to whether she was actually confused or deceived by the letter, then a class action may not be appropriate. That barrier, however, is removed because the FDCPA applies an objective standard. The statute serves to "protect all consumers, the gullible as well as the shrewd." *Brown*, 464 F.3d at 454. Because of the "strict

liability" nature of the FDCPA, a class action is a superior form of adjudication.  *See Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012).

**IV.     Conclusion**

The Court finds the requirements of Rule 23(a) and 23(b)(3) are met, and that certification of Bordeaux's proposed class is proper.  An appropriate order will be entered.


                                                                s/ Katharine S. Hayden
                                                                Katharine S. Hayden, U.S.D.J.


Dated:  December 28, 2017